UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LISA M. HOLLAND,

    Plaintiff,

v.                        CASE NO: 8:08-cv-2458-T-33EAJ

DAVID A. GEE, in his official
capacity as Sheriff of
Hillsborough County,

    Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Plaintiff's Motion for Partial Summary Judgment (Doc. # 16) and Defendant's Motion for Summary Judgment (Doc. # 21). Each party has filed their respective response in opposition thereto (Docs. # 47 & 46, respectively).

**I.  Background**

Plaintiff's complaint was removed to this Court on December 11, 2008, alleging a violation of the Florida Civil Rights Act of 1992, § 760.01, Florida Statutes, ("FCRA") and a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA"). Plaintiff asserts that Defendant discriminated against her on the basis of her sex (pregnancy) as to both a position transfer and her termination.

In 2003, Plaintiff was hired as a temporary employee by Defendant to work as a Data Processing Telecommunications Technician ("DP Tech"). DP Techs provide computer and hardware support to the Hillsborough County Sheriff's Office ("HCSO"). The title "DP Tech" is a Civil Service Classification. Plaintiff was hired into a temporary position because there were no vacant budgeted positions for which she qualified. In January 2004, Plaintiff's temporary employment position was set to expire pursuant to Civil Service rules and regulations. In lieu of termination, Defendant changed Plaintiff's status to independent contractor. At the time, Defendant planned to create additional DP Tech positions on a piecemeal basis, but those positions had to be taken through the budget process and approved. Plaintiff was subsequently classified as an independent contractor for three and a half years.

In January 2007, Plaintiff became pregnant and informed her supervisors of her pregnancy. Vickie Lay ("Lay"), Supervisor of the Telecom Techs Maintenance Unit, asked Plaintiff if there were any limitations or restrictions on her ability to perform her job. Plaintiff advised Defendant that she could not work in the jail or do any heavy lifting.

In March 2007, Defendant's IT Help Desk was implementing

2

a project. Since the project required the full attention of the Help Desk personnel, Teresa Sterns ("Sterns"), Manager of User Support, requested that a DP Tech be assigned to the Help Desk. Plaintiff was selected for the assignment. The transfer did not involve a reduction in pay.

Sterns, who was involved in the decision to permanently transfer Plaintiff to the Help Desk, testified that it was "[f]rom a consideration on my part, which apparently was not appropriate, I felt it was a nice thing to do" and that she "personally thought if I were pregnant, I would prefer to work on the help desk as opposed to the job as a technician." [Sterns, Doc. # 43 at 27-28]. Sterns and Lay had discussions regarding "a concern knowing the history of [Plaintiff] having lost the [previous] baby." [Sterns, Doc. # 43 at 28].

Plaintiff did not want to be transferred to the Help Desk and informed her supervisors of the same. Plaintiff was transferred back to the DP Tech position on May 14, 2007.

On May 15, 2007, Plaintiff provided a note from her doctor specifying work restrictions for the duration of her pregnancy. The note provided that Plaintiff should not lift more than twenty pounds and should not climb ladders. Lay gave the note to Sterns, who discussed the restrictions with Chris

Peek, Chief Informational Officer.[1] Peek informed Sterns that the HCSO was unable to accept the doctor's note because Plaintiff was an independent contractor and not an employee. Based on this instruction, Sterns e-mailed Plaintiff to see if there were any limitations or restrictions that might impact her ability to complete work assignments in Plaintiff's own words as opposed to a doctor's note. On May 18, 2007, Plaintiff submitted a second doctor's note, which provided that Plaintiff could not do any heavy lifting over twenty pounds, climb ladders, or have any contact with prison inmates. Defendant did not honor her doctor's note because Plaintiff did not provide restrictions in her own words. Plaintiff was subsequently assigned work orders without consideration of the requested restrictions.

During the next few weeks, Plaintiff began to decline work orders and failed to maintain contact with the HCSO regarding the progress of her work. On June 11, 2007, Defendant decided to terminate Plaintiff's independent contractor agreement, stating that her services were no longer needed based on her lack of performance.

---

[1] Plaintiff reported to Lay, Lay reported to Sterns, Sterns reported to Peek, and Peek reported to Chief Deputy Docobo.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

## III. Analysis

### A. Status as an Employee

Plaintiff moves for summary judgment on the issue of her status as an "employee" as the term is defined in the FCRA and Title VII. Title VII has been interpreted to protect employees and not independent contractors.[2] Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1242 (11th Cir. 1998). A multi-factor test is used to determine whether a

---

[2]Courts construe the FCRA in conformity with Title VII. Accordingly, federal case law interpreting Title VII applies to the FCRA. Castleberry v. Edward M. Chadbourne, Inc., 810 So.2d 1028, 1030 (Fla. 1st DCA 2002); Maniccia v. Brown, 171 F.3d 1364, 1368 n.2 (11th Cir. 1999).

person is an employee or an independent contractor. <u>Cobb v. Sun Papers, Inc.</u>, 673 F.2d 337 (11th Cir. 1982). The factors considered are:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

<u>Id</u>. at 340. "No one factor is controlling, nor is the list exhaustive .... The weight of each factor depends on the light it sheds on the putative employee's dependence on the alleged employer, which in turn depends on the facts in the case." <u>Santelices v. Cable Wiring</u>, 147 F. Supp. 2d 1313, 1319 (S.D. Fla. 2001); <u>see also</u> <u>Eisenberg v. Advance Relocation & Storage, Inc.</u>, 237 F.3d 111, 114 (2d Cir. 2000).

Although Plaintiff signed an independent contractor agreement, the Court finds that Plaintiff is an employee for Title VII and FCRA purposes based on an analysis of the

factors.

It is clear that Plaintiff was doing the same job as the DP Techs that were considered employees and were not hired as independent contractors. Defendant's expectations of Plaintiff were the same as that of other DP Techs, and the job description and title was the same. Plaintiff was treated in all pertinent respects as all the other DP Techs. She received work orders from her supervisor and was required to report the results to her supervisor utilizing Defendant's work order system. Plaintiff was required to work eight hours a day, Monday through Friday. She was required to sign in each morning and sign out each evening at a central location.

Plaintiff was required to wear the same uniform purchased by Defendant as the other DP Techs. In addition, she was assigned a vehicle to drive to each assignment. Defendant provided the tools for Plaintiff to use and all work was done on the HCSO's premises.

Plaintiff worked for Defendant for approximately four years. During this time, it was her only source of income and she performed services for no other entity. Plaintiff was for all intents and purposes a DP Tech except for the job classification as an independent contractor. Defendant created the independent contractor position to circumvent the

7

Civil Service temporary employee requirements.

Accordingly, summary judgment is granted as to the issue of Plaintiff's status as an employee.

**B.** **Pregnancy Discrimination**

Pursuant to Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The PDA amended Title VII by providing that the prohibition against employment-related discrimination "on the basis of sex" includes discrimination based on pregnancy, childbirth, or related medical conditions. Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1312-13 (11th Cir. 1994).

The Eleventh Circuit has held that "[t]he PDA does not require that employers give preferential treatment to pregnant employees." Spivey v. Beverly Enter., Inc., 196 F.3d 1309, 1312 (11th Cir. 1999). Further, "an employer violates the PDA when it denies a pregnant employee a benefit generally available to temporarily disabled workers holding similar job positions." Id. at 1313.

The analysis applied to pregnancy discrimination cases is

8

the same as analysis in other Title VII sex discrimination cases. Armstrong, 33 F.3d at 1312-13. It is well settled that there are two types of discrimination actionable under Title VII: disparate treatment and disparate impact. Id. at 1313. Disparate treatment was defined by the Supreme Court as occurring when:

> The employer simply treats some people less favorable than others because of their race, color, religion, sex or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. Undoubtedly disparate treatment was the most obvious evil Congress had in mind when it enacted Title VII.

Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)(citations omitted).

The second type of Title VII discrimination, disparate impact, involves "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Id. at 335.

In this case, Plaintiff asserts that she was discriminated against due to her pregnancy, and she does not allege that a facially neutral policy had a disparate impact on her as a pregnant person. Thus, this is a disparate treatment case.

A prima facie case of pregnancy discrimination in disparate treatment cases is established when a plaintiff can show that she "(1) was a member of a protected class, (2) was qualified for the job she held, (3) suffered an adverse employment action, and (4) suffered from a differential application of work or disciplinary rules." <u>Sampath v. Immucor, Inc.</u>, 271 F. App'x 955, 960 n.5 (11th Cir. 2008).

Plaintiff may employ one of three means to establish her prima facie case of disparate treatment employment discrimination under Title VII as amended by the PDA: (1) direct evidence of discriminatory intent, (2) statistical analysis evidencing a pattern of discrimination, or (3) circumstantial evidence meeting the test established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Verbraeken v. Westinghouse Elec. Corp.</u>, 881 F.2d 1041, 1045 (11th Cir. 1989).

### 1. **Direct Evidence Regarding Transfer**

Direct evidence is "evidence from which a reasonable trier of fact could find, more probably than not, a casual link between an adverse employment action and a protected personal characteristic." <u>Wright v. Southland Corp.</u>, 187 F.3d 1287, 1293 (11th Cir. 1999).

The Eleventh Circuit has noted, "[o]nly the most blatant

10

remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004)(quotations omitted). Further, if the evidence suggests, but does not prove, discriminatory motive, it is circumstantial evidence rather than direct evidence. Burrell v. Board of Tr., 125 F.3d 1390, 1393 (11th Cir. 1997). For statements to qualify as direct evidence of discrimination, such statements must come from a decision maker. Bass v. Bd. of County Comm'r, 256 F.3d 1095, 1105 (11th Cir. 2001).

If a plaintiff comes forward with direct evidence of discriminatory intent, an employer must prove that the same employment decision would have been made absent any discriminatory intent. Young v. Gen. Foods Corp., 840 F.2d 825, 828 (11th Cir. 1988); Wright, 187 F.3d at 1302-03.

Here, Plaintiff argues that there is direct evidence of intentional discrimination in relation to her transfer to the Help Desk. Plaintiff contends that there is no dispute that Plaintiff was pregnant and was transferred from her duties as a DP Tech to the Help Desk because she was pregnant. Plaintiff specifically points to these comments, among others, made by Sterns that "[f]rom a consideration on my part, which

11

apparently was not appropriate, I felt it was a nice thing to do" and that Sterns "personally thought if I were pregnant, I would prefer to work on the help desk as opposed to the job as a technician." [Sterns, Doc. # 43 at 27-28].

The Court finds, however, that Defendant has raised a genuine issue of material fact as to who made the decision to transfer Plaintiff to the Help Desk, and, therefore, the issue of whether the direct discriminatory statements were made by the decision maker precludes summary judgment. Specifically, Defendant contends that Sterns testified that it was Peek's decision to assign Plaintiff to the Help Desk. [Sterns, Doc. # 32 at 26].

There is also a genuine issue of material fact as to whether the transfer to the Help Desk constitutes an adverse employment action. While Defendant argues that a transfer without a change in pay, benefits, title or work hours will not ordinarily be considered an adverse employment action, Plaintiff contends that a transfer to a different position can be adverse if it involves a reduction in pay, prestige or responsibility and that such is the situation in the case at bar. Hinson v. Clinch County Bd. of Ed., 231 F.3d 821, 829 (11th Cir. 2000). Plaintiff asserts that her transfer was to a position with less responsibility and more menial tasks.

McCabe v. Sharrett, 12 F.3d 1558, 1564 (11th Cir. 1994). The Court finds that the facts of this case create a genuine issue of material fact as to whether Plaintiff's transfer to the Help Desk constitutes an adverse employment action. But see Davis v. Town of Lake Park, 245 F.3d 1232, 1244 (11th Cir. 2001)(unfair work assignment claims against public entities strike at the heart of an employer's business judgment and expertise as the public entity "must balance limited personnel resources with the wide variety of critically important and challenging tasks expected of them by the public").

Finally, the Court notes that Defendant has not proffered sufficient evidence from which it could conclude that the same employment decision, i.e., Plaintiff's transfer to the Help Desk, would have been made absent any discriminatory intent. Accordingly, Plaintiff's motion for partial summary judgment must be denied as to this issue.[3]

---

[3] The Court notes that even if there was direct evidence of discrimination and no other genuine issues of material fact, Plaintiff's motion for partial summary judgment would still be denied to the extent it seeks a ruling of "statutory liability," i.e., it seeks a ruling that Plaintiff is entitled to summary judgment that Defendant discriminated against Plaintiff. Plaintiff's ability to proffer direct evidence of discrimination creates a genuine issue of material fact as to the cause of Plaintiff's transfer, an issue that then turns largely on whether Plaintiff's witnesses or Defendant's witnesses are to be believed. Such a credibility determination can be made only after trial, and the entry of

## 2. **Circumstantial Evidence Regarding Termination**

In analyzing allegations supported by circumstantial evidence under Title VII, the Court follows the burden-shifting analysis established in McDonnell Douglas and its progeny. See Gamboa v. Am. Airlines, 170 F. App'x 610, 612 (11th Cir. 2006)(citing Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998)). Under the McDonnell Douglas framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination against defendant. McDonnell Douglas, 411 U.S. at 802.

If the plaintiff successfully establishes a prima facie case of pregnancy discrimination, a rebuttable presumption of discrimination is created and the burden of proof then shifts to the defendant. Id. at 802-03; Dickinson v. Springhill Hosps., Inc., 187 F. App'x 937, 939 (11th Cir. 2006)(citing EEOC v. Joe's Stone Crab, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002)).

To rebut the presumption created by the plaintiff's prima facie case, the defendant must provide "legitimate, nondiscriminatory reason[s]" for the employment action taken against the plaintiff. Texas Dep't of Cmty. Affairs v.

---

summary judgment on this claim would be inappropriate. See Wright, 187 F.3d at 1305.

Burdine, 450 U.S. 248, 254 (1981); Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998). However, "[t]his is a burden of production, not persuasion." Standard, 161 F.3d at 1331. "[The defendant] must merely produce evidence that could allow a rational fact finder to conclude" its actions were not motivated by discriminatory animus. Id.

If the defendant produces such evidence, the burden shifts back again to the plaintiff. McDonnell Douglas, 411 U.S. at 802-03. The plaintiff then "has the opportunity to come forward with evidence, including the previously produced evidence establishing her prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997)(citations omitted). In fact, when a defendant volunteers a legitimate, nondiscriminatory reason for an adverse employment action, the Court should skip the McDonnell Douglas analysis altogether and proceed directly to the question of whether the plaintiff has sufficient evidence to carry her burden of persuasion on the question of improper discrimination. Wright, 187 F.3d 1287, 1305 n.24.

Defendant moves for summary judgment on all counts in

Plaintiff's complaint, arguing that there are no genuine issues of material fact. As discussed above, however, there are genuine issues of material fact that preclude summary judgment as to Plaintiff's transfer to the Help Desk. Accordingly, only a discussion of Plaintiff's termination claim is necessary here.

As to Plaintiff's termination, Defendant has given legitimate, nondiscriminatory reasons for Plaintiff's termination; i.e., lack of performance and the full-time DP Tech positions were filled.[4] Thus, the Court must evaluate

---

[4]Defendant argues that Plaintiff cannot establish a prima facie case as to her termination because she was not qualified for the position from which she was terminated. As discussed above, the Eleventh Circuit has held that when the defendant volunteers a legitimate, nondiscriminatory reason for the adverse employment action, the district court should skip the McDonnell Douglas analysis altogether. Wright, 187 F.3d at 1305 n.24. The Court notes, however, that Plaintiff is qualified for the position because she held the position for four years. Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354 (11th Cir. 1999); Young v. General Foods Corp., 840 F.2d 825, 830 n.3 (11th Cir. 1988)("the *McDonnell Douglas* test has been modified in cases where a plaintiff was discharged from a previously held position (as opposed to failure to hire or to promote cases) by deleting the prong requiring proof of qualification")(internal quotations omitted); Pace v. Southern Railway Sys., 701 F.2d 1383, 1386 n.7 (11th Cir. 1983)(finding that "where a plaintiff has held a position for a significant period of time, qualification for *that* position, sufficient to satisfy the test of a prima facie case can be inferred"). Even if Plaintiff was not qualified by virtue of holding the position for such a length of time, there is a disputed issue of material fact that would preclude summary judgment as to the exact requirements of the DP Tech position.

16

whether a reasonable jury could conclude that Plaintiff's termination was the result of illegal sex discrimination; i.e., whether Defendant's legitimate, nondiscriminatory reasons for Plaintiff's termination are merely pretextual. See Mann v. Austin, Nichols & Co., Inc., No. 98-1883-CIV-T-24(C), 1999 WL 1292880 at *3 (M.D. Fla. Nov. 23, 1999).

Within the McDonnell Douglas burden-shifting analysis, a plaintiff may show pretext when she is able to demonstrate "such weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's proffered reasons that "a reasonable factfinder could find them unworthy of credence." Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005).

Defendant offers two reasons for Plaintiff's termination in its motion for summary judgment: (1) lack of performance; and (2) the full-time DP Tech positions were filled. Defendant's position statement submitted to the Equal Employment Opportunity Commission ("EEOC"), however, states only that Plaintiff was terminated for performance reasons. It does not assert that Plaintiff's position was eliminated due to the satisfaction of the permanent DP Tech positions. Pretext can be demonstrated where the defendant changes or shifts reasoning for a personnel action. See, e.g., Bechtel

Constr. Co. v. Secretary of Labor, 50 F.3d 926, 935 (11th Cir. 1995)("The pretextual nature of Bechtel's terminating Nichols is further demonstrated by Bechtel's shifting explanations for its actions.").

In addition, Plaintiff has pointed to inconsistencies as to the termination being performance based. The decision to terminate Plaintiff was made as a result of a discussion between Chief Docobo and Peek, with Chief Docobo as the ultimate decision-maker. [Peek, Doc. # 45 at 53]. Chief Docobo testified that Plaintiff was terminated because "[s]he couldn't do the job." [Docobo, Doc. # 44 at 75]. Chief Docobo's knowledge of Plaintiff's performance was based on conversations with Peek. [Docobo, Doc. # 44 at 88]. However, Peek testified that this was not a disciplinary termination [Peek, Doc. # 45 at 52], and Sterns stated that it was "absolutely not" a disciplinary termination. [Sterns, Doc. # 43 at 34]. At Plaintiff's termination, her job performance was not discussed. [Lay, Doc. # 18 at 51].

The Court finds that Plaintiff has established inconsistencies or contradictions in Defendant's proffered reasons such that a reasonable factfinder could find them unworthy of credence. Specifically, Plaintiff has established that Defendant has advanced different and potentially

18

conflicting reasons for its actions at various stages of the process. Cleveland v. Home Shopping Network, 369 F.3d 1189, 1194-95 (11th Cir. 2004); Brettner v. Colonial Pipeline Co., No. 1:06-CV-0764-TWT, 2007 WL 2071539, at *9 (N.D. Ga. July 17, 2007)("The Court concludes that the Defendant's differing and sometimes contradictory reasons for this firing indicate a degree of untruthfulness that, when viewed in the light most favorable to the Plaintiff, demonstrate a genuine issue of pretext."). Accordingly, genuine issues of material fact preclude summary judgment in favor of Defendant, and Defendant's motion is due to be denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff's Motion for Partial Summary Judgment (Doc. # 16) is **GRANTED IN PART and DENIED IN PART.** The motion is granted as to Plaintiff's status as an "employee" under the FCRA and Title VII; and denied as to "statutory liability" for transferring Plaintiff.

(2) Defendant's Motion for Summary Judgment (Doc. # 21) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>16th</u> day of June, 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE