UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LISA M. HOLLAND,

       Plaintiff,

v.                         CASE NO:  8:08-cv-2458-T-33AEP

DAVID A. GEE, in his
official capacity as Sheriff
of Hillsborough County,

       Defendant.
_____/

## ORDER

This cause comes before the Court pursuant to Defendant's Oral Motion for Judgment as a Matter of Law (Doc. # 85) and his Memorandum in Support (Doc. # 96).  Plaintiff filed a Memorandum of Law in Opposition thereto (Doc. # 97).

### I.  Procedural History

Plaintiff's claim that Defendant discriminated against her on the basis of her sex (pregnancy) as to both a position transfer and her termination came to trial before this Court and resulted in a verdict in favor of Plaintiff.  Defendant made an oral motion for judgment as a matter of law prior to the jury's verdict, which this Court took under advisement and now determines is due to be denied.

### II. Rule 50(A)

Rule 50(a) of the Federal Rules of Civil Procedure

permits the Court to grant judgment as a matter of law against a party with respect to a claim or defense when a party "has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a).  The Eleventh Circuit provided detailed analysis of Rule 50 of the Federal Rules of Civil Procedure in Middlebrooks v. Hillcrest Foods, Inc., 256 F.3d 1241 (11th Cir. 2001):

> A motion for judgment as a matter of law shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.  This motion can be renewed after trial under Rule 50(b), but a party cannot assert grounds in the renewed motion that it did not raise in the earlier motion.  The rule protects the non-moving party's right to cure deficiencies in the evidence before the case is submitted to the jury.  The moving party cannot ambush the court and opposing counsel after the verdict when the only remedy is a completely new trial.

Id. at 1245 (internal citations omitted).

Courts should grant judgment as a matter of law only "if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." Id. at 1246.  Stated another way, "[u]nder Rule 50, a court should render judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable

2

jury to find for that party on that issue." <u>Cleveland v. Home Shopping Network, Inc.</u>, 369 F.3d 1189, 1192 (11th Cir. 2004). Further, in conducting a Rule 50 analysis, this Court must refrain from invading the province of the jury: "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." <u>Id.</u> at 1193 (internal citations omitted). "If reasonable jurors could reach different results, [the Court] must not second-guess the jury or substitute [the Court's] judgment for its judgment." <u>Shannon v. Bellsouth Telecommunications, Inc.</u>, 292 F.3d 712, 715 (11th Cir. 2002)(internal quotations omitted).

## III. <u>Analysis</u>

A prima facie case of pregnancy discrimination in disparate treatment cases is established when a plaintiff can show that she "(1) was a member of a protected class, (2) was qualified for the job she held, (3) suffered an adverse employment action, and (4) suffered from a differential application of work or disciplinary rules."   <u>Sampath v. Immucor, Inc.</u>, 271 F. App'x 955, 960 n.5 (11th Cir. 2008).

Plaintiff may employ one of three means to establish her prima facie case of disparate treatment employment discrimination under Title VII, as amended by the Pregnancy

3

Discrimination Act: (1) direct evidence of discriminatory intent, (2) statistical analysis evidencing a pattern of discrimination, or (3) circumstantial evidence meeting the test established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

In analyzing allegations supported by circumstantial evidence under Title VII, the Court follows the burden-shifting analysis established in McDonnell Douglas and its progeny. See Gamboa v. Am. Airlines, 170 F. App'x 610, 612 (11th Cir. 2006)(citing Harper v. Blockbuster Ent. Corp., 139 F.3d 1385, 1387 (11th Cir. 1998)). Under the McDonnell Douglas framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination against defendant. McDonnell Douglas, 411 U.S. at 802.

If the plaintiff successfully establishes a prima facie case of pregnancy discrimination, a rebuttable presumption of discrimination is created and the burden of proof then shifts to the defendant. Id. at 802-03; Dickinson v. Springhill Hosps., Inc., 187 F. App'x 937, 939 (11th Cir. 2006)(citing EEOC v. Joe's Stone Crab, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002)).

4

To rebut the presumption created by the plaintiff's prima facie case, the defendant must provide "legitimate, nondiscriminatory reason[s]" for the employment action taken against the plaintiff. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998). However, "[t]his is a burden of production, not persuasion." Standard, 161 F.3d at 1331. "[The defendant] must merely produce evidence that could allow a rational fact finder to conclude" its actions were not motivated by discriminatory animus. Id.

If the defendant produces such evidence, the burden shifts back again to the plaintiff. McDonnell Douglas, 411 U.S. at 802-03. The plaintiff then "has the opportunity to come forward with evidence, including the previously produced evidence establishing her prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997)(citations omitted). In fact, when a defendant volunteers a legitimate, nondiscriminatory reason for an adverse employment action, the Court should skip the McDonnell Douglas analysis altogether and proceed directly to the question of whether the plaintiff

has sufficient evidence to carry her burden of persuasion on the question of improper discrimination.  <u>Wright</u>, 187 F.3d 1287, 1305 n.24.

Defendant raises several issues as grounds for granting his Rule 50 motion.  The Court, however, finds that the evidence supports the jury's verdict such that Defendant's motion is due to be denied.

A.   <u>Plaintiff's Qualification for the Position</u>

Defendant argues that Plaintiff did not prove that she was qualified for the full-time DP Tech position. Interestingly, Defendant notes in a footnote that Plaintiff does not complain of the denial of a permanent DP Tech position; that she did not file a charge addressing that action; nor did she include the issue in her complaint or the pre-trial statement.  Doc. # 96 at  p. 11 n.7.  The fact that Plaintiff was not hired into a permanent DP Tech position is a non-issue.  Plaintiff did not pursue a failure to hire case and did not present a case to the jury that she should have been hired into a permanent DP Tech position.  She, instead, claimed that she was fired from her independent contractor position because of her pregnancy.

To the extent that Defendant argues that Plaintiff was not qualified for the position she held when she was

transferred and terminated, the Court previously held that
Plaintiff was qualified for the position because she held the
position for four years.  Order, Doc. # 58 at p. 16 n.4
(citing Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d
1354 (11th Cir. 1999); Young v. General Foods Corp., 840 F.2d
825, 830 n.3 (11th Cir. 1988)("the *McDonnell Douglas* test has
been modified in cases where a plaintiff was discharged from
a previously held position (as opposed to failure to hire or
to promote cases) by deleting the prong requiring proof of
qualification")(internal quotations omitted); Pace v. Southern
Railway Sys., 701 F.2d 1383, 1386 n.7 (11th Cir. 1983)(finding
that "where a plaintiff has held a position for a significant
period of time, qualification for *that* position, sufficient to
satisfy the test of a prima facie case can be inferred")).

B.   Plaintiff's Independent Contractor Status

Defendant spends a good deal of time discussing his
decision to cast Plaintiff as an independent contractor,
including the fact that Plaintiff was not pregnant at the time
of the decision.  The Court finds this discussion irrelevant
to Plaintiff's case.  Plaintiff did not seek to prove that the
decision to characterize her as an independent contractor was
motivated by pregnancy.

C.  <u>Help Desk Transfer as an Adverse Employment Action</u>

Defendant argues that Plaintiff failed to establish that her assignment to the Help Desk was an adverse employment action.  Defendant submits that the assignment to the Help Desk did not alter Plaintiff's compensation, terms, conditions, or privileges of employment, deprive her of employment opportunities, or adversely affect her status as an employee.  <u>See</u> <u>Crawford v. Carroll</u>, 529 F.3d 961, 970 (11th Cir. 2008).  A transfer or demotion without a change in pay, however, may still be considered an adverse employment action. <u>Hinson v. Clinch County, Ga. Bd. of Educ.</u>, 231 F.3d 821, 829 (11th Cir. 2000)("a transfer to a different position can be 'adverse' if it involves a reduction in pay, prestige or responsibility").

Eleventh Circuit case law supports that a transfer to a position with less responsibility and more menial tasks can constitute an adverse action.  <u>See</u> <u>McCabe v. Sharrett</u>, 12 F.3d 1558, 1564 (11th Cir. 1994).  Evidence that a job is a lower pay grade, even if the transferred employee does not receive a pay decrease, may be used to demonstrate that such action is adverse.  <u>Id</u>. (evidence that a job to which an employee was transferred was two pay grades lower, even though the employee did not receive a pay decrease, was an adverse employment

8

action).

There was conflicting evidence at trial as to whether the reassignment to the Help Desk was temporary or permanent. Sterns testified that she labeled the reassignment as permanent in an email because the Sheriff's Office no longer needed Plaintiff's services after it filled the sixth and final DP Tech position.  Plaintiff's Exh. 11.  Accordingly, the jury could have viewed the reassignment as permanent.

There was testimony that the employees staffing the Help Desk received a lower pay grade than those that worked as DP Techs.  TI p. 246; TII p. 92.  In addition, Anthony Gay, a DP Tech, testified that he would view this transfer as a demotion.  TII p. 92-93.  Several witnesses, including Chief Deputy Docobo, explained that the Help Desk duties are vastly different than those of a DP Tech.  Anthony Gay described the Help Desk as providing "level one support" over the phone, while DP Techs performed "level two support."  TII p. 93. There was testimony that the position at the Help Desk required Plaintiff to sit at a desk and answer phones rather than actively working on computers outside of the office. Accordingly, the Court finds that there was sufficient evidence to support the jury's finding that the assignment to the Help Desk was an adverse employment action.

D.   <u>Comparators</u>

Defendant makes the argument that Plaintiff failed to demonstrate the existence of any DP Tech who was retained as an independent contractor, employees wrongfully treated as contractors or any other independent contractor retained by the Sheriff's Office, who was not pregnant who was treated more favorably than Plaintiff.  Defendant submits that these are Plaintiff's only valid comparators.  This Court disagrees. This Court previously found that Plaintiff is, in fact, an employee for purposes of Title VII and Florida Civil Rights Act claims.  Specifically, the Court stated in its order on the summary judgment motions:

> Although Plaintiff signed an independent contractor agreement, the Court finds that Plaintiff is an employee for Title VII and FCRA purposes based on an analysis of the factors.
> It is clear that Plaintiff was doing the same job as the DP Techs that were considered employees and were not hired as independent contractors. Defendant's expectations of Plaintiff were the same as that of other DP Techs, and the job description and title was the same.  Plaintiff was treated in all pertinent respects as all the other DP Techs. She received work orders from her supervisor and was required to report the results to her supervisor utilizing Defendant's work order system. Plaintiff was required to work eight hours a day, Monday through Friday.  She was required to sign in each morning and sign out each evening at a central location.
> Plaintiff was required to wear the same uniform purchased by Defendant as the other DP Techs.  In addition, she was assigned a vehicle to

10

> drive to each assignment.  Defendant provided the
> tools for Plaintiff to use and all work was done on
> the HCSO's premises.
>      Plaintiff      worked      for      Defendant      for
> approximately four years.  During this time, it was
> her   only   source   of   income   and   she   performed
> services   for   no   other   entity.   Plaintiff   was   for
> all   intents   and   purposes   a   DP   Tech   except   for   the
> job   classification   as   an   independent   contractor.
> Defendant   created   the   independent   contractor
> position   to   circumvent   the   Civil   Service   temporary
> employee   requirements.

Order,   Doc.   #   58   at   p.   6-8.   Accordingly,   the   proper

comparators   are   other   DP   Techs   employed   by   the   Sheriff's

Office.   See   Brown v. Alabama Dep't of Transp.,   597 F.3d 1160,

1174 (11th Cir. 2010)(comparators "must be similarly situated

in all relevant respects").

     There is direct evidence that Plaintiff was transferred

to the Help Desk because she was pregnant.   TI p. 250-51;

Plaintiff's Ex. 10.   There was also testimony from Chris Peek

that Plaintiff's pregnancy was a factor in the decision to

terminate Plaintiff.   TI p. 188.   The use of the McDonnell-

Douglas framework requiring comparison to other employees is

not necessary when direct evidence is present.   However, even

if   the   McDonnell-Douglas   framework   is   applied,   Plaintiff

satisfied her prima facie case.

     Evidence of disparate treatment included the following:

Plaintiff   was   transferred   to   the   Help   Desk   because   of   her

11

pregnancy.  TI p. 250-51; Plaintiff's Exh. 10.  Plaintiff was asked to provide a doctor's note regarding her restrictions due to her pregnancy and then the doctor's notes she provided were not accepted by Defendant.  TI p. 184-85; 259-60; TII p. 121-25; Plaintiff's Exh. 3-4, 7-8.  Plaintiff was assigned tasks that she could not perform per her doctor's restrictions.  TII p. 121-25.  Finally, Plaintiff was terminated.  TI p. 208; Plaintiff's Exh. 1.  The evidence showed that the other DP Techs were not transferred to the Help Desk, were afforded light duty when necessary, and had their doctor's notes honored.[1]  TII p. 22.  Accordingly, Plaintiff satisfied any prima facie case requirement of showing that she was subjected to disparate treatment.

E.   Pretext

Defendant asserts that even if Plaintiff can establish a prima facie case, she cannot show that the Sheriff's Office's nondiscriminatory reasons for her reassignment to the Help Desk and her termination were pretextual.

---

[1]Defendant argues that pregnant employees were never denied light duty, but the testimony cited was as to law enforcement officers only and, therefore, is not relevant as law enforcement officers are not proper comparators.  TI p. 152-53.

i.  <u>Help Desk</u>

Plaintiff proffered direct evidence of discrimination in relation to her transfer to the Help Desk.  Sterns, the person who made the decision to transfer Plaintiff, admitted that Plaintiff was transferred because of her pregnancy.  TI p. 250-51.  Concern for Plaintiff's pregnancy, no matter how well-intentioned, cannot justify differential treatment.  <u>See Int'l Union, UAW v. Johnson Controls, Inc.</u>, 499 U.S. 187 (1991).  As there is direct evidence that Plaintiff was transferred to the Help Desk because of her pregnancy, Plaintiff does not bear the burden of disproving any legitimate, nondiscriminatory reason for her transfer to the Help Desk.  Instead, the question is one for the jury, and there was enough evidence to support the jury's finding.

ii.  <u>Comparators</u>

Defendant states that Plaintiff may not rely on the contention that other comparable employees who were not pregnant were treated better than she as a basis for pretext because she had no comparators.  As discussed above, Plaintiff's comparators are the DP Techs, and Plaintiff successfully established disparate treatment.

iii. <u>Nondiscriminatory Reasons for Termination</u>

Within the <u>McDonnell Douglas</u> burden-shifting analysis, a

13

plaintiff may show pretext when she is able to demonstrate "such weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's proffered reasons that "a reasonable factfinder could find them unworthy of credence." Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005)(citations omitted).  Moreover, the mere existence of a legitimate, nondiscriminatory reason for an employment action does not mean that the jury must find in favor of Defendant.  Instead, a jury may still conclude that pregnancy was a motivating factor, among others.  Desert Palace, Inc. v. Costa, 539 U.S. 90, 101-02 (2003).  The Court finds that there was sufficient evidence that pregnancy was a motivating factor in the decision to terminate Plaintiff.

Defendant raises its own "mistaken or even inappropriate treatment of an employee as an independent contractor" as a legitimate, nondiscriminatory reason for Plaintiff's termination.  The Eleventh Circuit, however, has stated:

> A good faith belief that [the plaintiff] was an independent contractor is not a "legitimate, non-discriminatory business reason" for terminating her.  The evidence would tend to prove merely that [the employer] did not believe that [the plaintiff] was protected by Title VII.  As is well-established, ignorance of the law is not a defense.

Demers v. Adams Homes of Northwest Fla., Inc., 321 Fed. App'x 847, 853 (11th Cir. 2009)(citations omitted).

14

Moreover, there was evidence that Defendant did not terminate Plaintiff simply because she was an independent contractor and her services were no longer needed.  First, Plaintiff was kept as an independent contractor for approximately four months after the last permanent DP Tech position was filled.  The person selected to fill the last DP Tech position began work on February 26, 2007.  TI p. 205. Plaintiff was terminated on June 11, 2007.  TI p. 139; TII p. 136; Plaintiff's Exh. 1.  Chris Peek admitted that Plaintiff was retained for three-and-a-half months after he says her services really weren't needed.  TI p. 208.  Defendant, in fact, states in his memorandum that "had [Plaintiff] not pressed the issue of her status as an employee, it is entirely conceivable that she might have been able to be retained as an independent contractor, notwithstanding the error of that designation."  Doc. # 96 at p. 20 n.10.  Accordingly, there was sufficient evidence by which the jury could find that the lack of need for an independent contractor was pretextual.

Defendant cites Plaintiff's work performance as a legitimate, nondiscriminatory reason for Plaintiff's termination that Plaintiff did not establish as pretextual. Defendant states that it is undisputed that after returning to her "field support role," Plaintiff refused assignments that

15

she deemed inconsistent with her doctor's restrictions. Docobo made the decision to terminate Plaintiff, and he said that his decision was based on his determination that he was no longer going to deal with Plaintiff's conduct and specifically her refusal to do her job. TI p. 139-41. Sterns testified that Plaintiff had 16 open work orders and failed to update the Sheriff's Office on the progress of those orders.

The Court notes that Plaintiff's refusal of assignments that she deemed inconsistent with her doctor's restrictions is related to Defendant's treatment of Plaintiff as an independent contractor. Defendant asked for Plaintiff to provide a doctor's note regarding restrictions due to her pregnancy and then would not honor the restrictions. Because Defendant's reason for termination is based on Plaintiff's refusal of work assignments, which, in fact, were refused by Plaintiff after Defendant failed to honor Plaintiff's pregnancy restrictions based on her status as an independent contractor, there is room for a jury to find that Defendant's legitimate, nondiscriminatory reason was pretextual.

Defendant argues that Plaintiff herself raised her status as a whistle blower in regards to the IRS inquiry as a potential reason for her termination. However, Chief Docobo testified that the Sheriff's Office did not think ill of

16

Plaintiff for making an IRS inquiry. TI p. 167-68. Defendant also argues that he had no choice but to terminate Plaintiff when the IRS determined that Plaintiff could not be considered an independent contractor because there were no permanent DP Tech positions available. Defendant states that "had [Plaintiff] not pressed the issue of her status as an employee, it is entirely conceivable that she might have been able to be retained as an independent contractor, notwithstanding the error of that designation. Once the IRS issued it ruling, however, in a letter chronologically coincident to the one terminating [Plaintiff's] contract, that option was eliminated. There was no position, temporary or permanent, available to her after June 12, 2007." Doc. # 96 at p. 20 n.10. Although this is relevant to Plaintiff's entitlement to lost wages, it is not relevant to Defendant's reasons for Plaintiff's termination. The letter from the IRS was dated the same as the date of Plaintiff's termination letter and was not presented at trial as a reason for Plaintiff's termination. Defendant's Exh. 41; TI p. 167-68. Accordingly, the jury could not have considered this as a legitimate, nondiscriminatory reason for Plaintiff's termination.

F.   Entitlement to Lost Wages

Plaintiff was awarded $80,000 by the jury in compensation for a net loss of wages and benefits through the date of trial and $10,000 for emotional pain and/or mental anguish. Defendant argues that Plaintiff is not entitled to an award of any damages to compensate for any back pay or benefits. Defendant asserts that it is undisputed that after the Sheriff's Office terminated Plaintiff's independent contractor agreement, the Sheriff's Office received notice from the IRS that Plaintiff was an "employee" for purposes of federal employment taxes and income tax withholding, and not an independent contractor.  It was this determination, Defendant submits, that gave the Sheriff's Office no ability to employ Plaintiff as a DP Tech because there were no vacant budgeted positions available.  As such, Defendant argues that Plaintiff is not entitled to an award of any damages to compensate for any back pay or benefits.  This Court agrees.

The after-acquired evidence doctrine establishes that evidence that the employee would have been terminated for lawful reasons will make certain remedies, such as reinstatement and front pay, unavailable, and other remedies, such as back pay, may be limited to salary lost from the date of the unlawful discharge until the date the employer

18

discovered the information that would have led to a discharge on lawful grounds. McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 360-62 (1995); Crapp v. City of Miami Beach, 242 F.3d 1017 (11th Cir. 2001).

The Crapp case involved a claim of a police officer that his termination was racially motivated in violation of Title VII. Id. at 1019. The jury found for the plaintiff and awarded him $150,000 in compensatory damages, and the district court awarded him back pay and reinstatement, but stayed reinstatement pending a decision by the Florida Department of Law Enforcement ("FDLE") regarding whether the plaintiff would be decertified as a police officer. Id. The FDLE suspended the plaintiff's certification for two years effective from the date of his termination. Id. The defendant then moved for relief pursuant to Rule 60(b), asking the court to set aside the judgment or order a new trial. Id. The court denied the motion but vacated the award of back pay and reinstatement reasoning that, under McKennon, the plaintiff was not entitled to back pay or reinstatement because he was no longer certified to be a police officer. Id. The Eleventh Circuit found that the district court "appropriately recognized that the [defendant] could have fired [the plaintiff] for a lawful reason - lack of certification - on the same day that it fired

him for a discriminatory reason" and concluded that the district court properly took account of the FDLE's decision as "after-acquired evidence" under McKennon. Id. at 1021.

As in the Crapp case, Plaintiff could have been terminated for a lawful reason the day after she was terminated for what the jury determined was an unlawful reason. Specifically, Plaintiff was terminated on June 11, 2007, the same day that the IRS issued its letter with its ruling that Plaintiff was an "employee," not an independent contractor, for purposes of federal employment taxes and income tax withholding. Because Defendant could no longer employ Plaintiff as an independent contractor and there is no dispute that there were no permanent DP Tech positions available at the time of Plaintiff's termination, Defendant could have fired Plaintiff for a lawful reason the day after it fired her for an unlawful reason. As such, the Court finds that Plaintiff is not entitled to the $80,000 awarded by the jury as back pay.

Because the Court finds that the award of back pay should be vacated, it need not address Defendant's argument that Plaintiff failed to mitigate her damages by using reasonable diligence to find substantially equivalent employment.

IV.   **Conclusion**

After   careful   consideration   of   Defendant's   motion,
Plaintiff's response, and the trial testimony and evidence,
the   Court   finds   it   inappropriate   to   overturn   the   jury's
verdict as to its finding of discrimination.   The Court notes
that this case is more factually complex than the run-of-the-
mill discrimination case.   It is complicated by Defendant's
categorization of Plaintiff as an independent contractor.   It
is further complicated by the involvement of the IRS and the
timing of the IRS's determination that Plaintiff could not be
characterized as an independent contractor.   However, despite
the factual complexity of this case, the evidence submitted by
Plaintiff during trial was sufficient for a jury to find that
Plaintiff's transfer to the Help Desk and her termination were
both adverse actions unlawfully motivated by her pregnancy.
Accordingly,   upon   due   consideration,   the   Court,   unable   to
substitute   its   judgment   for   the   judgment   of   the   jury,
determines that there was sufficient evidence for a reasonable
jury to find in favor of Plaintiff on her discrimination
claims.   Further,   for   the   reasons   stated   above,   the   Court
finds that the jury's award of $80,000 for lost wages and
benefits must be vacated.

21

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)    Defendant's Oral Motion for Judgment as a Matter of
       Law (Doc. # 85) is **DENIED** as to the jury's finding
       of discrimination and **GRANTED** as to Plaintiff's
       entitlement to back pay or benefits.

(2)    The Clerk is directed to enter judgment in favor of
       Plaintiff as to her claims of discrimination,
       including an award of damages for emotional pain
       and/or mental anguish in the amount of $10,000.

(3)    The jury's verdict as to damages for a net loss of
       wages and benefits through the date of trial in the
       amount of $80,000 is **VACATED.**

       **DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>17th</u>
day of March, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record

22